# MAY, 1930

PRUDENTIAL BUILDING & LOAN ASSOCIATION v. JAMES SHAW, BANKING COMMISSIONER.

No. 5489. Decided March 26, 1930, May 7, 1930.
(26 S. W., 2d Series, 168, 27 S. W., 2d Series, 157.)

*Turner, Rodgers & Winn,* for relator.

Section 57 of the new building and loan act is a wise provision. It evidently is born of experience and is designed to protect the interests of the stockholders. It violates no contractual or property right of the stockholder. It places him in no worse position than he finds himself at the time the section is resorted to, and he has the decided advantage of reaping the profits to be derived from the liquidation of frozen assets in an orderly manner by a going concern as against the disadvantages of a speedy and uneconomical liquidation through the means of a receivership.

There being no juvenile shares issued by the petitioner, as defined in the Act, and consequently there being no possible discrimination in favor of juvenile shares, as those defined on account of the writing down of the liabilities, it appears that the issue of unconstitutionality on account of the exception would go out of the case.

When the association, by vote of its stockholders, agrees to write down the liabilities to the shareholders proportioned to the actual value of their investment they do not deprive the shareholder of any contractual or property rights but he finds himself in identically the same position as if the liability to him had not been written down.

It is the established law in this state and in practically all jurisdictions that the contracts of an infant are voidable and that the infant may, within a reasonable time after reaching his majority, set aside such contracts and recover the consideration theretofore by him paid.

In the absence, therefore, of any statutory provision, the infant could, upon reaching his majority, recover from an insolvent building and loan association, upon his exercise of his right to rescind the contract, all monies theretofore paid by him into the association, free from any claims for premiums or fines or losses, and when Section 57 of the Act gives this right in express terms to juvenile shares, whether as defined in the Act or whether referring to the shares of all infants, it gives to him no more than he was already entitled to, and therefore could not be unconstitutional because it takes away from other stockholders any rights of property belonging to them to their disadvantage and to the advantage of the infant.

If a building and loan association has issued ten shares of stock of the par value of $100.00 per share, the holder of each share is entitled upon insolvency and liquidation and distribution to one-tenth of the total net assets. That proportionate distribution is not

affected by changing the nominal par value of the share from $100.00 to $200.00 or from $100.00 to $10.00 or from $100.00 to no par value. In any event and in such an institution the holder of a share is entitled to one-tenth of the net assets as above stated.

When, therefore, the law authorizes in cases of insolvency the writing down of the liabilities in order to make the association apparently solvent and in order to enable it to continue in an orderly manner with the liquidation of its affairs, it has not taken from the stockholder any vested right nor any right of property nor has it impaired his contract obligation.

A borrowing stockholder in a building and loan association, whose payments have been applied first to interest upon his note, and the balance to dues for the purpose of stock, must, in the event of insolvency take his loss in the value of his stock, along with the investing stockholders.

*Robert Lee Bobbitt, W. Dewey Lawrence* and *John W. Goodwin,* for respondent.

Section 57, of Chapter 61, Acts of the Second Called Session of the Forty-first Legislature, page 100, authorizing the reduction of the liability of a building and loan association to its members and upon which petitioner relies, is illegal and void in that said article is so vague and indefinite as to be incapable of understanding and further incapable of being executed.

Said Section 57 is illegal and void in that it is discriminatory by reason of authorizing a reduction of liability to several classes of members and stockholders without making the reduction apply equally to all the members and stockholders of such association invoking the terms of said article.

The petition presented to the Banking Commissioner of Texas by the petitioner was not authorized by the requisite number of stockholders and/or members of the said Prudential Building and Loan Association.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding filed in the Supreme Court by the Prudential Building & Loan Association of Dallas, hereafter referred to as the Association, against James Shaw, Banking Commissioner of the State of Texas, hereafter referred to as the Commissioner, to compel him to receive, consider and pass upon the application of the Association to have its liabilities

to its stockholders written down and reduced, as provided under Sec. 57, Chap. 61, Acts Second Called Session, 41st Legislature, 1929. The section in question is found at page 122 of said Acts. The undisputed record shows that the Association is a domestic corporation, duly incorporated, with its domicile and principal office at Dallas, in Dallas County, Texas; that it has an authorized capital stock of $10,000,000, and that it is duly organized and doing business under and by virtue of the laws of this State governing such organizations on the usual building and loan plan.

It is further shown by the record that the Association is insolvent in the sense that its total assets, at their present fair cash market value are insufficient to pay the stockholders one hundred cents on the dollar of their investment; and, in this connection, it is shown that the present value of the Association's assets are $1,153,471.71, whereas its liabilities consist of amounts due for borrowed money, and accounts payable and reserves in the aggregate sum of $111,518.06. This leaves net assets at their present fair cash value available for liquidating its stockholders' accounts of $1,041,953.65, its liabilities to its stockholders being $1,291,903.47.

It also appears that on August 16, 1929, the governing officers of the Association, realizing its condition as to insolvency, and its inability to pay from its assets to its stockholders the full amount of their investment, sent a letter to each of the stockholders advising them that a meeting of such stockholders would be held on August 28, 1929, for the purpose of considering the writing down of its liabilities to its stockholders as provided in Sec. 57, of the Act of the 41st Legislature, supra. The meeting of the stockholders was held on the date named in the call. At this meeting there was a quorum of the stockholders present, representing 20,524 shares and $860,000 in the amount of their investment. The number of shares represented at this meeting was more than 50 per cent of the total number of shares issued and outstanding, and was more than 76 per cent of the total value of such shares so issued and outstanding.

At this meeting, the stockholders, after a full consideration and analysis of the affairs of the Association, made by its auditors, and after a full and detailed investigation by the stockholders present, and after a full and complete disclosure and discussion of the matters involved, by a vote of 99.98 per cent of those present, adopted a resolution providing for the writing down of the liabilities of the Association under the provisions of Sec. 57, of the

Building and Loan Act, supra, and instructed the directors of the Association to prepare and present the petition of the Association to the Banking Commissioner of Texas in order that he might pass thereon and write down the liabilities of the Association to its stockholders to a point that would render the Association solvent, and thus enable it to continue its business as a solvent going concern, and liquidate its frozen assets in a proper and orderly manner.

In conformity with the above instructions from the stockholders, the Association acting by and through its board of directors and executive officers, prepared and presented to the Commissioner the petition of the Association asking and praying that he approve the action of the stockholders, directors and executive officers of the Association and write down its liabilities to its stockholders as authorized by Sec. 57, of the Act, supra.

The Commissioner declined to act on the above petition and declined to write down the liabilities of the Association as requested, because he doubted his authority to do so, in that he doubted the validity of the Act in question for the following reasons:

(a) Because said Sec. 57, supra, is illegal and void in that it is too vague and indefinite to be capable of understanding; and further it is too vague and indefinite to be capable of execution;

(b) Because said Sec. 57, supra, is illegal and void, and is discriminatory by reason of authorizing a reduction of liability to several classes of stockholders without making the reduction apply equally to all members and stockholders, and

(c) Because said petition was not authorized by a requisite number of stockholders or members of the Association.

The petition for mandamus here is to compel the Commissioner to receive the petition of the Association and act upon it.

We shall now consider the objections to the validity and constitutionality of the law in the order above indicated.

Sec. 57 of the Building and Loan Association Act now under consideration reads as follows:

"*Reduction of Liability to Members.* Whenever the losses of any building and loan association, resulting from depreciation in value of its securities or otherwise, exceed its contingent reserve fund, undivided profits and current earnings, so that the estimated value of its assets is less than the total amount due its members, the Banking Commissioner of Texas upon petition of such building and loan association, may order a reduction of its liability to its members, except upon juvenile shares, in such manner as to dis-

tribute the loss equitably among such members. If thereafter such association shall realize from such assets a greater amount than was fixed in the order of reduction, such excess shall be divided among members whose credits were so reduced, but to the extent of such reduction only."

The first objection offered to the validity of the Act is that it is too vague and indefinite to be capable of understanding. We infer from the arguments that the Commissioner contends in this connection that the part of the Act which provides: "upon petition of such building and loan association," etc., renders the Act inoperative and void because it does not provide how or through whom the Association shall act in making the application to the Commissioner to write down its stock. It is our opinion that the Act is sufficiently definite in this respect. A corporation, as such, usually acts through its board of directors and executive officers in transacting its business affairs, and, under this Act, it is our opinion that when the board of directors ascertains that the stock of the Association is impaired and the Association for that reason insolvent, such board has the right, under the statute, Sec. 57, to petition the Commissioner to act under the law, and write down the stock as provided therein. We think the board not only has the power, but that it is the duty to make the application when it is ascertained that the stock is impaired for the reason that the Association has no right to continue business as a going concern after it has become both illegal and actually insolvent. In the case at bar the petition is made by the board of directors and executive officers acting on instruction from a majority of the stockholders. The petition, therefore, comes on ample authority from the Association and the Act is not too vague and indefinite to be capable of being understood in this particular.

The second objection urged is that the Act, Sec. 57, is unconstitutional and void, in that it is discriminatory. The argument made is that the provision in the statute exempting juvenile shares from being written down renders the Act inoperative and void in that it discriminates in favor of juvenile shares. In the instant case it is agreed that this Association has no juvenile shareholders within the contemplation of the statute. Such being the case that matter is not involved here. Furthermore, even if we did have juvenile shareholders here, and even if the provision of the Act exempting juvenile shares should be held to be inapplicable to juvenile stockholders who became such prior to the passage of the

Act, still the Act can be applied to those who become stockholders after its passage and the constitutionality of the Act thus upheld.

We are further of the opinion, however, that even if this Association should have juvenile shareholders who were such prior to the passage of the Act, that the provisions of the Act could be applied to them without violating any constitutional provision, either Federal or State.

The Building & Loan Association Act in question, Sec. 37-e, defining juvenile shareholders and their rights, reads as follows:

"Juvenile shares which may be issued in the name of any minor. Such shares shall be held for the exclusive right and benefit of the minor and free from the control or lien of any other persons. The dues paid upon these shares, together with the dividends credited thereto, may be withdrawn in whole or in part by the person in whose name they were issued during his minority and his receipt or acquittance shall be valid and sufficient release and discharge to the association for such accumulated dues together with the dividends credited thereon, or any part thereof. Juvenile shares shall not be subject to any membership or withdrawal fees of any nature, or to fines for failure to pay dues punctually, nor shall the holder thereof be required to make regular or specific payments. Such shares shall not be chargeable with losses of any kind nor shall they entitle the holder to vote at any meeting of the shareholders. Such shares may be credited with dividends at a rate not less than sixty per centum of the rate of dividend apportioned and credited to installment shares, as the by-laws shall provide. The matured value of all the juvenile shares issued by an association shall not exceed in the aggregate at the time of issue, twenty-five per centum of the aggregate matured value of existing shares of all other classes."

It was the established law of this State long before the passage of this Act that the contracts of an infant or minor are voidable, and that the infant or minor may, within a reasonable time after reaching his majority, set aside such contracts, and recover the consideration theretofore paid by him. Of course, he must restore the consideration received by him in its then condition, if he still has it. Also if the consideration received by the infant or minor has depreciated on account of wear and tear or is entirely lost, nevertheless he is still entitled to recover the full amount of consideration paid by him. It follows, therefore, that even if the statute under consideration did not exist, an infant could, upon reaching

his majority, recover from an insolvent association all moneys theretofore paid by him into the association free from all claims for premiums, fines and losses. Therefore, when the Act gives him this right by express terms of the statute, it merely preserves to him such rights as he already had. We therefore hold that the provisions of the Act in question in regard to juvenile or infant shareholders do not render the Act void, so far as it applies to the instant case, for the reasons above given which stated in fewer words are:

(a) There are no juvenile shareholders in the instant case and the legislature certainly has the right insofar as future activities of corporate associations such as this are concerned to provide for certain preferences to be given to certain shareholders. In such instances the statute would be read into the contract of each shareholder and would be perfectly valid. We do not give statutes a retroactive effect when such a construction would render them void unless it is plainly evident that the legislature so intended; and,

(b) An infant already has the right, on arriving at his majority to rescind the contract and recover the full amount paid by him. Therefore, the statute gives no additional right.

The third objection has been discussed and disposed of by us in discussing the first objection.

We deem it proper for us to here generally discuss the Act in question.

A building and loan association as established and operated under our laws, is a peculiar corporation. On its inception a share therein has only a nominal value. The basis and essential principle of such a concern is mutuality, but it is neither a corporation nor a partnership to the fullest extent. "They have been variously described as mutual benefit associations, membership corporations, quasi or corporate partnerships." 9 C. J., 922.

Under our laws, as they now and have heretofore existed, such an association is a private corporation, but it has no fixed capital, and is, to a certain extent, quasi public in its nature. Also such an association is mutual in its operation; but there is no unlimited liability to its members or shareholders. Such an association is seldom insolvent in the sense that it cannot pay its debts to outside creditors; but it is often, and in the instant case is, insolvent as to its shareholding members.

In cases such as the instant one, where the association is insolvent in the sense that it cannot pay its shareholders in full, it is clear to us that Sec. 57 of the Act here under consideration does not take away from the stockholders any vested right. In truth and in fact, no

right whatever is taken away or affected. The stockholder, after the liability of the Association to him has been written down, is no better and no worse off than he was before. His stock in no event can be worth more than its proportionate part of the assets of the Association, and likewise it cannot be worth less. In any event, the rights of the shareholders are fully protected by the express provisions of the statute, which in effect provide that should the Association realize from the assets a greater amount than fixed by the order of reduction such excess shall be divided among the members whose credits have been so reduced, etc. In other words, the only effect of writing down the stock under the statute is to make the books and records of the Association speak the truth, so that it may thereafter conduct its business affairs in such a manner as to avoid sacrificing its assets by proceeding to forfeit its charter, etc. We think the Act a wise and salutary one, and that it violates no constitutional provision, state or federal. Of course, should the Commissioner act arbitrarily or unlawfully in writing down the assets of the Association, the courts are open to those whose property is affected.

The relator in the instant case insists that we should pass on the application of the statute here under consideration as applied to borrowing and non-borrowing shareholders. Ordinarily the borrowing shareholder as such stands on the same basis as a non-borrowing shareholder. If there is any reason in the instant case why a preference of any kind should be given a non-borrower it does not appear in the record. The general rule is that a borrowing shareholder occupies a dual relationship to the association. "As a stockholder he is a member of, and, in theory at least, participates in the management of the corporation. In that capacity he shares in the expenses of the business, the losses, and profits, just as would a stockholder of any other corporation." This is the rule of law generally known as "The Pennsylvania Rule." This rule is approved by the almost overwhelming weight of authority. Groover v. Pacific Coast Savings Soc., 43 L. R. A., 874, and notes; Smith v. Bath Building & Loan Association, 50 A. L. R., 526, and annotations 533 et seq. We also cite the following Texas authorities as more or less in point in support of the above rule. Price v. Kendall, 36 S. W., 810 (Civ. App. Writ Ref.); Leary v. Peoples Building & Loan Ass'n, 93 Texas, 1, 51 S. W., 836; Interstate, etc. v. Goforth, 94 Texas, 259, 59 S. W., 871; Building & Loan Ass'n v. Logan, 33 S. W., 1088 (Civ. App. Writ Ref.); Sweeney v. El Paso, etc., 26 S. W., 290 (Civ. App. Writ Ref.); Blakely v. El Paso, etc., 26 S. W., 292

(Civ. App. Writ Ref.); Pioneer Savings, etc. v. Everheart, 44 S. W., 885 (Civ. App. Writ Ref.); Building & Loan Ass'n v. Griffin, 90 Texas, 840, 39 S. W., 560.

In the Price case, supra, it is shown that the stockholder borrowed money from the association. In the same transaction he also bought stock, paying therefor in installments. It was contemplated that when the stock by payments and dividends reached its par value it would be applied to the payment and liquidation of the loan. Payments were regularly made and applied first to the interest on the loan and the balance on the purchase price of the stock. Before maturity the association became insolvent and its affairs were placed in the hands of a receiver. The borrowing shareholder then demanded that the amount of his payment theretofore applied to dues upon his stock be credited on the principal of his loan. We quote the following from the opinion of Judge Garrett from the Court of Civil Appeals in passing upon the case:

"Should the payments of dues or assessments made upon the shares of stock be regarded as payments in extinguishment of the debt? Some time before payments of dues upon the shares belonging to Sawyer ceased, it was discovered that the stock of the association, by reason of losses, was not worth the amount of dues that had been paid thereon, and in a sense the association had become insolvent, since it was not able to redeem its shares at the cancellation price or by a return of all dues paid thereon. In winding up the affairs of the association the non-borrowing shareholders must perforce accept a pro rata distribution of the assets of the corporation upon their shares, whether they are sufficient to return all dues or not; and, unless the dues of borrowing shareholders are to be treated as payments upon their obligations, there can be no reason why they should not share the losses of the association equally with the other shareholders. By the plan of the association, the borrowing member received the par value of his stock in advance, and obligates himself to mature it by the payment of assessments, and when it becomes mature, if his obligation has not been sooner discharged, his stock is then cancelled and his obligation discharged; but the stock never becomes matured until it is worth par value. Thus it will be seen that there is a plain distinction between the stock and the debt. The language of Judge Henry in the case of Association v. Abbott, 85 Texas, 224, 20 S. W., 118, regarding the payment of dues, although in discussion of the question of usury, is appropriate here: 'Such payments are not for the use of borrowed money, but through them the shareholder acquires an interest in the property of the

corporation. The shareholder is not necessarily also a borrower. If he is not one, he pays for his stock on the same terms that the borrowing stockholder does. There is no inconsistency in the double relation. If not also a borrower, the retiring stockholder withdraws the value of his stock. If he is also a borrower, he uses it to pay his debt with.' There is no reason why the borrowing stockholder should be placed in any better attitude than those who are not, when the association has failed to carry out its undertaking, and ceased efforts to mature the stock. The default of the association is the default of all of the shareholders, whether they be borrowers or non-borrowers, and all losses that impair the value of the stock should be applied equally to every share. McGrath v. Association, 44 Pa. St., 383; Strohen v. Association (Pa. Sup.), 8 Atl., 843; Towle v. Society, 61 Fed., 446; Rogers v. Hargo (Tenn. Sup.), 20 S. W., 430. There is authority for the opposite doctrine, but the weight of authority as well as of reason is with the cases above cited and others in line therewith. Authority contra: Buist v. Bryan (S. C.), 21 S. E."

In the Leary case, supra, the Supreme Court speaking through Judge Brown, held that the association was entitled to collect its debts from a borrowing stockholder, less the *actual value* (italics ours) of the stock at the time of sale under a deed of trust. These words are very significant, as Judge Brown clearly intended thereby to say that a borrowing shareholder was only entitled under the facts of that case, to credit on the loan to the extent of the actual value of the stock. There are other questions decided in the Leary case which are not pertinent here.

The Goforth case, supra, is not directly in point, but we cite it for the reason that we think the opinion recognizes the dual relation of a borrowing shareholder. This is shown by the statement in the opinion that, "the payments monthly of premiums upon the shares of stock amounting to $5.04 on each share per month, did not, under the terms of the contract, constitute a present payment on the debt," etc.

The Logan case also is not directly in point. We cite it also to show that it recognizes the dual relation of a borrowing shareholder. In this opinion it is stated: "That he wanted a loan, and took the stock in order to get the loan, would make no difference in the fact that he became a stockholder, and assumed the obligation of such."

We think that the Sweeney, Blakely, Everheart and Griffin cases, supra, all show that our courts have recognized the dual relationship of a borrowing shareholder in a building and loan association.

In the instant case, the rule above announced should be applied and the stock of both borrower and the non-borrower written down alike unless there is some contract between the shareholder and the Association which prevents such action.

We recommend that the mandamus issue as prayed for.

The opinion of the Commission of Appeals is adopted, and the mandamus awarded.

C. M. Cureton, Chief Justice.

### ON MOTION FOR REHEARING.

Mr. Judge CRITZ delivered the opinion of the Commission of Appeals, Section A.

On motion for rehearing Relator, Prudential Building & Loan Association complains only of that part of our original opinion defining the right of borrowing stockholders, because we did not define such rights as affected by Section 40, of Chapter 61, Acts Second Called Session of the 41st Legislature, 1929, as originally enacted, or said Section 40 as amended by the Act of the Fifth Called Session of the same Legislature, 1930.

As originally enacted, and as it existed at the time our original opinion was prepared, Section 40 read as follows:

"Repayment of Loans. Any loan made by a building and loan association may be repaid at any time after three months has elapsed from the time of making such loan, provided the borrower shall pay the principal due thereon (less the withdrawal value of the shares transferred as security therefor), loan expenses, the premium due and the interest accrued at the time of such repayment, and all sums advanced by the association for taxes, assessments or insurance premiums, with interest thereon; and in addition thereto interest on the principal repaid for the period of three months after the date of repayment. Any borrower desiring to retain the shares may repay his loan without claiming credit for the withdrawal value of such shares, whereupon such shares shall be retransferred to the borrower and shall be free from any claim by reason of said loan. If any such association is in process of voluntary liquidation, the shares of a borrowing member shall be entitled to full participation in the assets of such association, and their value as thus determined shall be applied upon the indebtedness of such member. If any such association is in process of involuntary liquidation, the minimum value of the shares owned by the borrowing member, which amount is to be applied by the receiver upon the

indebtedness of the member, must be not less than the actual dues payments made by such borrower upon his shares plus credited dividends less any lawful charges owing upon such shares."

As amended by the Act passed by Fifth Called Session of the 41st Legislature on March 17, 1930, Section 40, now reads as follows:

"Repayment of Loans. Any loan made by a building and loan association may be repaid at any time after three months have elapsed from the time of making such loan, provided the borrower shall pay the principal due thereon (less the withdrawal value of the shares transferred as security therefor), loan expenses, the premium due and the interest accrued at the time of such repayment, and all sums advanced by the association for taxes, assessments or insurance premiums, with interest thereon; and in addition thereto interest on the principal repaid for the period of three months after the date of repayment. Any borrower desiring to retain the shares may repay his loan without claiming credit for the withdrawal value of such shares, whereupon such shares shall be retransferred to the borrower and shall be free from any claim by reason of said loan. If any such association is in process of either voluntary or involuntary liquidation, the payments made by such borrower, plus credited dividends, less any lawful fees, fines, penalties or advances owing by such member on his shares of stock, shall be applied on the indebtedness owing by such borrower, who shall have the same time for payment at the same rate of interest as would have been required if said association were not in liquidation."

In our original opinion we construed Section 57 of the 1929 Act, and the rights of borrowing and non-borrowing shareholders thereunder. In doing this we did not attempt to pass on or construe Section 40 of the 1929 Act, or to define the rights of borrowing members thereunder. Also at the time the original opinion was actually prepared the Amendment of 1930 had not been passed, and the original opinion therefore does not, and could not have any reference to such amendment.

With the above explanation, we recommend that the motion for rehearing be overruled.