## FIDELITY BUILDING & LOAN ASS'N v. THOMPSON et al.

### No. 1493—5769.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

M. B. Soloman and Paul T. Doss, both of Dallas, for plaintiff in error.

Turner, Rodgers & Winn and Otis Bowyer, Jr., all of Dallas, for defendants in error.

James V. Allred, Atty. Gen., and Everett L. Looney, Asst. Atty. Gen., and Sylvan Lang and Leslie Byrd, both of San Antonio, as amici curiæ.

CRITZ, J.

The opinion of Chief Justice Jones of the Court of Civil Appeals at Dallas makes a very excellent and comprehensive statement of the facts, issues, and result of this case, and, as we cannot improve on the statement of that court, we here now adopt the same. Such statement is reported in 25 S.W.(2d) page 247, 248, and is:

"This is an appeal from a judgment entered on the 22d day of May, 1928, in a district court of Dallas county in two suits pending in said court, which suits had been consolidated by an order of the court.

"One of the suits was instituted by Fidelity Building & Loan Association against George W. Stell and wife, for recovery on a building and loan note executed by said Stell and wife to the loan association, and to foreclose a deed of trust lien on real estate given to secure the note. F. G. Kune intervened in this suit, alleging that he had theretofore subscribed for 20 shares of the par value of $100 in said loan association, that said shares were fully paid up, and that there existed in his favor a credit on the books of the loan association in the sum of $2,000. Other allegations were made in this plea showing his right to intervene.

"The second suit was filed by the Texas Building & Loan Association of Dallas against J. O. Thompson and wife to recover on a building and loan note executed by the Thompsons on April 16, 1928, in the sum of $4,000, and to foreclose a deed of trust lien given to secure the loan. The notes in each of the suits bore interest from date at the rate of 10 per cent. per annum, payable in monthly installments, and maturing when their shares of stock in the association were fully paid up, or if default of more than 30 days was made on installment payments. Mrs. Maggie McLendon and husband, Jeff D. McLendon, intervened in this suit, alleging that Mrs. McLendon had theretofore subscribed for 20 shares of stock, of the par value of $100, in said loan company, that said shares were fully paid up, and that there existed to her cred-

it on the books of said loan company the sum of $2,000, and made further allegations showing her interest in the subject-matter of the suit and her right to intervene. J. Hugh Campbell also intervened in this suit, alleging that he had theretofore subscribed for 10 shares in said association, and had paid thereon at the time of filing this suit the sum of $20.06, and made other allegations showing his interest in the subject-matter and his right to intervene.

"Appellant, Fidelity Building & Loan Association, will hereafter be styled Fidelity Company, and appellee Texas Building & Loan Association of Dallas will hereafter be styled Texas Company. The other appellees will be styled by their respective names.

"On January 11, 1929, an attempted consolidation of these two companies was had, and the name of the Texas Company adopted as the name of the consolidated companies. About six months previous to this consolidation, the directors and officers of the Fidelity Company had resigned, and the officers and directors of the Texas Company were elected as directors and officers of the Fidelity Company. The management of the two companies was thereby vested in the same officers, but the two companies were operated as separate and distinct companies until after the consolidation, when they were operated as one company. Both the Texas Company and the Fidelity Company were incorporated as building and loan associations under the provisions of articles 852–881, Vernon's Ann. Tex. Stats. The Texas Company and the interveners in its suit challenged the validity of this consolidation. The Texas Company raised this issue in its pleading because of the fact that it had theretofore, but after the attempted consolidation, secured the opinion of the Attorney General, to the effect that the attempted consolidation of the two companies was void. The two interveners in their respective petitions alleged the invalidity of the consolidation on the same theory that the Attorney General had pronounced the attempted consolidation void. The Fidelity Company, by supplemental pleading in the consolidated case, alleged the validity of the act of consolidating the two companies, stating its ground for so believing, and the interveners in the suit of the Fidelity Company also alleged the validity of the consolidation on practically the same grounds. Thompson and wife, defendants in the suit filed by the Texas Company, do not appear to have filed an answer, but did file assignments of error in the trial court. Stell and wife, defendants in the suit of the Fidelity Company, filed an answer consisting of a general demurrer and a general denial, a plea of virtual insolvency on the part of the Fidelity Company, alleging that its affairs were being directed by the commissioner of insurance of Texas, and that in justice and equity the suit should be held in abeyance until the Fidelity Company could be restored to a sound business condition.

"The case was tried to the court, and judgment entered decreeing the invalidity of the attempted consolidation, and further decreeing that the two companies must be considered and treated as though no consolidation had been attempted, and restoring to the owners the shares of stock that had been originally issued by the respective companies. Judgment was rendered in favor of the Fidelity Company against Stell and wife for the sum of $5,000 as principal of the note, and for unpaid interest thereon in the sum of $239.58. Judgment was rendered in favor of the Texas Company against J. O. Thompson and wife for $4,500, as principal of the note, and the sum of $362.22, as unpaid interest thereon. There was also rendered judgment foreclosing the deed of trust lien against the parties defendant in each of said suits. As against each defendant, the judgment decreed that it bear interest at the contract rate of 10 per cent. per annum from its date. The judgment further decreed that Stell and wife owned installment stock in the Fidelity Company in the sum of $708.22, and established it as a claim against the disbursements of the assets of the Fidelity Company to be paid when said company is liquidated, and denied the right of set-off against the indebtedness. The judgment also decreed that Thompson and wife owned installment stock in the Texas Company in the sum of $80, and established it as the same character of claim against the Texas Company, as was done in the Stell claim against the Fidelity Company. The judgment further decreed that intervener Kune owned fully paid-up stock in the Fidelity Company in the sum of $2,000, established same as a claim to be paid proportionately with other claimants when the Fidelity Company is liquidated. The judgment further established the claim of J. Hugh Campbell as owner of $20.06 of stock in the Texas Company, and directs its proportionate payment when said company should be liquidated, and the same character of judgment was entered in reference to the claim of $2,000 by intervener Mrs. McLendon to be paid by the Fidelity Company in the same way when such company is liquidated.

"The court filed conclusions of fact that are not excepted to by any of the parties, and must be treated as a statement of the material facts in this case; there being otherwise no statement of facts. These facts show that the Fidelity Company was insolvent at the time of the attempted consolidation on January 11, 1928, and had been insolvent for some time previous thereto, that the Texas Company was insolvent at the date of the trial, and that neither company is attempting to secure any new business. At the time of the

attempted consolidation, the inference is that the Texas Company was solvent.

"At the time of investment in its shares of stock, the Fidelity Company required the investor to sign a general proxy in the following language: 'At all stockholders meetings of said association, at which I am not present in person, the then secretary of the association shall vote all of my shares of stock as my proxy, and he is hereby appointed as such.' The proxy required to be signed by an investor in the Texas Company is as follows: "I hereby appoint the record owner of the largest number of shares of Class B certificates of the Texas Building & Loan Association of Dallas my attorney in fact and proxy, and authorize him to appear and vote all shares of stock held by me in said association at all shareholders meetings at which I am not present in person.'

"On January 1, 1928, a notice was mailed to every stockholder in each association of a stockholders meeting to be held on January 11, 1928, to consider the consolidation of the two associations. The meeting was held on such date by each company, and the stock in each company unanimously voted in favor of the consolidation, but practically all of the votes in each company were cast under and by virtue of the general proxies. Notice of the action of the stockholders, in consolidating the two associations, was given to each stockholder in a letter dated February 1, 1928, and since said date the two associations have been operated as one, under the name of Texas Building & Loan Association. The letter of notice of the meeting of January 11, 1928, contained statements showing that each company was in a solvent, if not even in a flourishing, condition. The inference is that the stockholders did not know of the insolvency of the Fidelity Company and the near insolvency of the Texas Company at that time. No protest appears to have been filed by any of the stockholders protesting the authority of the proxy holders to cast the votes for such stockholders for the consolidation.

"The borrowing members, who are defendants in this litigation, each executed a note providing for interest at the rate of 10 per cent. per annum payable monthly, a fixed sum for dues to mature stock payable monthly, and further provided that the note executed should mature when the shares of stock owned by such member should mature. The respective deeds of trust executed also contained this provision. The respective notes also each contained a provision that, if default in the payment of any installment of interest, or in payment of any dues or fines on shares, shall exist for 30 days after such installments or fines have become due, the legal holder of the note may declare the note due and payable.

"Prior to the attempted consolidation on January 11, 1928, the Texas Company advanced to the Fidelity Company the sum of $80,040.56, in order that the Fidelity Company might meet matured obligations it had outstanding. This money was advanced after both companies were being operated by the same officers and directors. After the attempted consolidation had been perfected, the Texas Company advanced to the Fidelity Company the additional sum of $50,638.23, making said advances equal the sum of $130,678.79.

"The judgment, supported by proper pleading, allowed the Texas Company a recovery against the Fidelity Company for the entire amount of these advances, with interest at the rate of 6 per cent. per annum.

"The Fidelity Company has duly assigned error on the action of the court in decreeing that the attempted consolidation was void. It has also duly assigned error on the action of the court in decreeing judgment against it, and in favor of the Texas Company for the sum of said advances. The Texas Company is the only appellee that has filed a brief. It contends that the judgment is correct in respect to the complaints of the Fidelity Company, but questions the correctness of the judgment in reference to the borrowing members, who were defendants in the suits below, and also as to the intervening nonborrowing members, so as to bring under review the entire judgment. The issues to be determined, therefore, are: (1) The validity of the attempted consolidation of January 11, 1928; (2) the status of the borrowing and nonborrowing members of an insolvent building and loan association, and the rule to be observed in its liquidation. These issues will be discussed in the order named."

We think the Court of Civil Appeals has for correct reasons properly held the attempted consolidation of the two associations illegal and void. We therefore approve and adopt so much of the opinion of that court as pertains to that question.

This brings us to a consideration of the rights and liabilities of the borrowing and nonborrowing shareholders, and the rules which must govern in the liquidation of the two associations.

An examination of the record discloses that both associations here involved were incorporated under the building and loan statutes of this state as they existed prior to the passage of the building and loan acts of 1929 and 1930, which we shall refer to later. Also at the time all contracts here involved were entered into the above-mentioned acts had not become effective. In fact, the 1929 act was passed and became effective after this case had been tried in the district court, and the 1930 amendment to the 1929 act became effective after the Court of Civil Appeals had disposed of this case.

██ Under the law as it existed prior to the enactment of the above acts, borrowing and nonborrowing shareholders stood on the

same basis; that is, their rights and liabilities as shareholders were equal. Also at the time mentioned a borrowing shareholder occupied a dual relationship to the association. As a shareholder he was a member of, and participated in, the management of the association. In such capacity he shared, in the expenses, losses, and profits of the association just as did a nonborrowing shareholder. Also, prior to the effectiveness of the above-mentioned statutes, when a building and loan association became insolvent and went into liquidation, it became the duty of the borrowing shareholder to at once pay his debt to the association. In such event, he was not entitled to offset dividends coming to him on his stock on his debt, for the very simple reason that it would be impossible to accurately ascertain the value of the stock until the association had been completely liquidated and the amount of receipts and expenses fully and accurately ascertained. In other words, the insolvency and liquidation of a building and loan association put an end to its operations for the purposes contemplated by its charter. To a certain extent this event also ended the contract between the association and its members, and it became necessary to wind up its affairs in such a manner as to do equity to creditors and between its members. In order to do this, it was held necessary to require the borrower to at once pay his debt to the association. After he had done this, he was entitled to his pro rata dividend with the nonborrowing shareholders for what he had paid upon his stock. In the manner above detailed, the borrowing and nonborrowing shareholders were placed upon an equal basis, and each, as a shareholder, required to bear his proportionate part of the losses. Prudential Building & Loan Ass'n v. Shaw, 119 Tex. 228, 26 S.W.(2d) 168 (Com. App. opinion adopted); Cocke v. Wright (Tex. Com. App.) 39 S.W. (2d) 590.

We here refer to the above cases and authorities there cited for a full discussion of the rules governing affairs of building and loan associations and demonstrating that the Pennsylvania rule was in force in this state prior to the enactment of the acts of 1929 and 1930 above mentioned.

Under the rule above announced, it is clearly evident that the right of a nonborrowing shareholder to compel a borrowing shareholder to pay his debt to an insolvent association in liquidation, and stand his share of the losses, was a valuable and substantial right, and went beyond any mere rule of procedure; this because to allow a borrowing shareholder to credit upon his debt to the association his payments on his stock would enable the borrowing shareholder to escape responsibility for his share of the losses, and would leave such losses to be borne wholly by the nonborrowing shareholders.

After this case was tried in the district court, the Legislature of this state enacted chapter 61, S. B. No. 111, found at page 100 et seq., Acts 2d Called Session, 41st Legislature 1929 (Vernon's Ann. Civ. St. art. 881a—1 et seq.). Section 40 of such act, which is found at page 116 (Vernon's Ann. Civ. St. art. 881a—39 and note), is directly involved here, and reads as follows: "Any loan made by a building and loan association may be repaid at any time after three months has elapsed from the time of making such loan, provided the borrower shall pay the principal due thereon (less the withdrawal value of the shares transferred as security therefor), loan expenses, the premium due and the interest accrued at the time of such repayment, and all sums advanced by the association for taxes, assessments or insurance premiums, with interest thereon; and in addition thereto interest on the principal repaid for the period of three months after the date of repayment. Any borrower desiring to retain the shares may repay his loan without claiming credit for the withdrawal value of such shares, whereupon such shares shall be retransferred to the borrower and shall be free from any claim by reason of said loan. If any such association is in process of voluntary liquidation, the shares of a borrowing member shall be entitled to full participation in the assets of such association, and their value as thus determined shall be applied upon the indebtedness of such member. If any such association is in process of involuntary liquidation, the minimum value of the shares owned by the borrowing member, which amount is to be applied by the receiver upon the indebtedness of the member, must be not less than the actual dues payments made by such borrower upon his shares plus credited dividends less any lawful charges owing upon such shares."

The above law, if valid and applicable, was in force at the time this case was decided by the Court of Civil Appeals, but was not in force at the time it was decided by the district court.

Subsequent to the act of 1929 above quoted, and also subsequent to the decision of this case by the Court of Civil Appeals, the Legislature of this state amended section 40 above quoted by the enactment of S. B. 69, ch. 51, p. 193, Acts Fifth Called Session of the 41st Legislature 1930 (Vernon's Ann. Civ. St. art. 881a—39). This amended act reads as follows: "Any loan made by a building and loan association may be repaid at any time after three months have elapsed from the time of making such loan, provided the borrower shall pay the principal due thereon (less the withdrawal value of the shares transferred as security therefor), loan expenses, the premium due and the interest accrued at the time of such repayment, and all sums advanced by the association for taxes,

assessments or insurance premiums, with interest thereon; and in addition thereto interest on the principal repaid for the period of three months after the date of repayment. Any borrower desiring to retain the shares may repay his loan without claiming credit for the withdrawal value of such shares, whereupon such shares shall be retransferred to the borrower and shall be free from any claim by reason of said loan. If any such association is in process of either voluntary or involuntary liquidation, the payments made by such borrower, plus credited dividends, less any lawful fees, fines, penalties or advances owing by such member on his shares of stock, shall be applied on the indebtedness owing by such borrower, who shall have the same time for payment at the same rate of interest as would have been required if said association were not in liquidation."

As we understand the opinion of the Court of Civil Appeals, that court holds that the provisions of the 1929 act, supra, could be applied in adjusting the rights of the several parties to this suit, and it is here contended by Fidelity Building & Loan Association, plaintiff in error herein, that the 1930 act should now be applied, since it has repealed and superseded the 1929 act.

We think that a careful study of the two acts will disclose that, if they have any application at all to this case, they both go far beyond any mere rule of procedure, and directly and vitally affect the contracts here involved.

Under the 1929 act, when a building and loan association was in involuntary liquidation, a borrowing shareholder was entitled to credit on his indebtedness for an amount "not less than the actual dues payments made by such borrower upon his shares plus credited dividends less any lawful charges owing upon such shares."

It is not clear to us just what was meant by the phrase "less any lawful charges owing upon such shares." If it meant to exclude his proportionate part of the losses, then it has effect to very materially alter the contract. If it meant to include such losses, then it was merely declaratory of an already existent rule, and could not affect this case. In either event, it is not necessary for us to construe the meaning of the phrase; this because, if it attempted to change the rule as it existed prior to the enactment of the act, it could not affect these contracts, and, if it was merely declaratory of the existent rule, then it did not affect them.

Under the act of 1930, supra, which expressly amends Section 40 of the 1929 act, it is provided in substance that, if any association is in process of either voluntary or involuntary liquidation, the payments made by the borrower, plus credited dividends, less any lawful fees, fines, penalties, or advances owing by such member on his shares of stock, shall be applied on his indebtedness, and that such borrower shall have the same time for payment at the same rate of interest that he would have required if said association were not in liquidation.

A reading of this act clearly demonstrates that it was thereby intended to relieve the borrowing shareholder from any losses suffered by the association, and also to relieve him of his liability to at once pay his debt to the association. Certainly such a law cannot be applied to contracts made before it went into effect.

The Court of Civil Appeals seems to hold that, since neither the appellate courts nor the Legislature of this state had announced a rule governing the rights and defining the liabilities of borrowing and nonborrowing shareholders of insolvent building and loan associations in liquidation at the time the act of 1929 became effective, the Legislature was at liberty to enact reasonable rules governing such matters and make them apply to contracts already in existence. We think this holding is correct in so far as it applies to matters purely procedural, but the Legislature is without power to pass any law that will in any manner impair the obligation of a previous contract. Section 16, article 1, Texas Constitution; section 10, article 1, Federal Constitution. Any law which reduces the amount that the nonborrowing shareholder would realize on his stock, or which unreasonably extends the time he will realize thereon, would be an impairment of his contract within the meaning of the constitutional provisions above cited. Furthermore, the mere fact that the courts had not declared the rule of law which would govern in the absence of the statute does not alter the case. The issues must be decided just as though the statute had never been enacted except as to procedural matters.

In this connection, however, we wish to say that in our opinion the courts of this state have already declared the Pennsylvania rule in force in this state. See Prudential Building & Loan Association v. Shaw, supra, and Cocke v. Wright, supra, and authorities there cited.

It is evident from what we have said that section 40 of the 1929 act, supra, as amended by the act of 1930, supra, cannot have application to impair contracts made prior to its effective date and therefore cannot be applied in this case at all. As to whether it can be held within the legislative intent that such 1930 amendment can apply to after-made contracts when it cannot be applied to prior contracts is not before us, and we express no opinion on that question.

Also we do not deem it necessary in this case for us to pass on the validity of section

40 of the 1929 act. This is evident for the reason that, if such act attempts to impair previous contracts, it is unconstitutional and void, and, if it be given the construction that it is merely declaratory of the Pennsylvania rule already in force in this state, it does not in any manner affect this case. In either event, the final result on the instant suit is the same.

A reading of the statement of this case made by the Court of Civil Appeals, and adopted by us, demonstrates that the judgment of the district court properly applies the rules of law which we have herein announced.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.