

# The Attorney General of Texas

November 25, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. L. Alvis Vandygriff
Commissioner
Texas Savings and Loan Department
P. O. Box 1089
Austin, Texas   78767

Opinion No.  MW-278

Re: Trust powers for state-chartered savings and loan associations

Dear Mr. Vandygriff:

You have asked several questions relating to the ability of a state-chartered savings and loan association to offer trust services. You indicate that these questions have arisen as the result of a recent federal statute, the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221. This act authorizes the Federal Home Loan Bank Board to permit federally chartered savings and loan associations to act as trustee, executor, administrator, or guardian, or in any other fiduciary capacity in which state banks, trust companies, or other corporations which come into competition with the federal associations are permitted to act under the laws of the state in which the association is located.

You first ask:

> 1. Does section 1, article 1513a, V.T.C.S., authorize a state-chartered savings and loan association to amend its articles of incorporation to offer trust services?

There is no express statutory authority similar to that contained in the recent federal law which authorizes state-chartered savings and loan associations to offer trust services. The two Texas statutes dealing with the subject are articles 1513a, V.T.C.S., and 852a, V.T.C.S., the Texas Savings and Loan Act. Section 1, article 1513a, V.T.C.S., provides:

> Except as provided by Section 6 of this Act, trust companies may be created, and any corporation, however created, may amend its charter in compliance herewith for the following purpose: to act as trustee... and as agent for the performance of any lawful act. ...

The exception referred to in section 6 covers foreign corporations and registered bank holding companies, banks, or trust companies whose operations are principally conducted outside of Texas. Other than those companies, section 1 does not prevent any particular type of corporation from amending its charter to provide trust services. To the contrary, the language specifically allows any corporation, however created, to amend its charter to offer trust services.

A state-chartered savings and loan association is a corporation. See Brazosport Savings and Loan Association v. American Savings and Loan Association, 342 S.W. 2d 747 (Tex. 1961); Prudential Building and Loan Association v. Shaw, 26 S.W. 2d 168 (Tex. 1930); see also V.T.C.S. art. 852a, §§2.01-.12.

We believe that the language of section 1, article 1513a, V.T.C.S., is sufficiently broad so as to include a savings and loan association as a corporation which may amend its charter to offer trust services.

Although the Texas Savings and Loan Act, article 852a, V.T.C.S., does not specifically address whether a state-chartered savings and loan association may exercise general trust powers, section 4.01 thereof provides that an association shall have the rights enumerated in the act and the rights and powers "incidental to or reasonably necessary for the accomplishment of the objects and purposes of the association." According to section 1.03(2), the primary purpose of an association is to promote thrift and home financing; the principal activity is the lending to its members of money accumulated in savings accounts of its members on the security of first loans on homes and other improved real estate. Other sections of the savings and loan act indicate that the statute was intended to permit state-chartered savings and loan associations to be able to compete effectively with federal associations. Cf. V.T.C.S. art. 852a, §§5.16, 6.20.

In order to fulfill its primary purpose, a state-chartered savings and loan association must be able to exercise powers which allow it to compete effectively with a federal association. We believe that the offering of trust services should be considered an incidental power which helps to minimize any competitive advantages that a federal association might have over state associations and thus enables the state associations to fulfill their primary purpose. Because the Texas Savings and Loan Act lacks an express prohibition against offering trust services and includes a grant of rights and powers incidental to the accomplishment of the purposes of the association, we believe that state-chartered savings and loan associations may utilize the provisions of article 1513a to amend their corporate charters to offer trust services.

You next ask:

> 2. May such association earmark all or a portion of its capital stock fund to meet the condition that a trust company have a fully paid-in capital of at least $500,000, as required in section 4 of article 1513a, V.T.C.S.?

Section 4 of article 1513a provides as follows:

> Any such company must have a fully paid-in capital of not less
> than $500,000.

No provision of article 1513a explains or further describes the capital requirement. We believe, however, that the term "paid-in capital" is the same as "paid-up capital" which is defined as "stated capital" in article 1302-1.02(2), V.T.C.S. The definition of "stated capital" is found in article 1.02A(11), Texas Business Corporation Act, which provides:

> (11) "Stated capital" means, at any particular time, the sum of:
>
> > (a) the par value of all shares of the corporation having a
> > par value that have been issued,
>
> > (b) the consideration fixed by the corporation in the
> > manner provided by law for all shares of the corporation
> > without par value that have been issued, except such
> > part of the consideration actually received therefor as
> > may have been allocated to capital surplus in a manner
> > permitted by law, and
>
> > (c) such amounts not included in paragraphs (a) and (b) of
> > this subsection as have been transferred to stated
> > capital of the corporation, whether upon the issue of
> > shares as a share dividend or otherwise, minus all
> > reductions from such sum as have been effected in a
> > manner permitted by law.

We do not find any inconsistency between this provision and provisions of the savings and loan act, and therefore we believe that it supplements the savings and loan act. See Bus. Corp. Act art. 9.14A.

Section 2.02 of article 852a, V.T.C.S., prescribes the only form or type of stock that a state-chartered savings and loan association may issue, which is referred to as "permanent reserve fund stock" and is also known as "capital stock." See Attorney General Opinion H-215 (1974). To the extent that a savings and loan association has a "stated capital" represented by its "permanent reserve fund stock" of at least $500,000, we believe this meets the requirement of section 4 of article 1513a, V.T.C.S. As this provision does not require such funds to be designated or earmarked for this purpose, we do not believe that a savings and loan association would be required to do so.

You next ask:

> 3. Does a savings and loan association that has authority to
> accept demand and time deposits pursuant to the Texas Savings

and Loan Act, article 852a, V.T.C.S, forfeit its authority to accept such deposits once it begins to offer trust services as a result of section 5 of article 1513a, V.T.C.S.?

Section 5 of article 1513a provides as follows:

Any such company shall not accept demand or time deposits, except as hereinabove provided.

The exception referred to by this section is contained in section 1, pertinent parts of which are as follows:

. . .any corporation, however created, may amend its charter. . . to act as trustee. . . and as agent for the performance of any lawful act, including the right to receive deposits made by agencies of the United States of America for the authorized account of any individual. . . .

We believe the purpose of section 5 is to prevent a corporation that does not independently possess the powers to accept demand or time deposits from asserting such power by virtue of the acquisition of trust powers by complying with article 1513a, V.T.C.S. We believe that the acquisition of trust powers by a state-chartered savings and loan association would merely be incidental to its operations, and thereby fall within the ambit of section 4.01 of article 852a, V.T.C.S. The savings and loan act authorizes state-chartered associations to accept savings accounts. V.T.C.S. art. 852a, §§6.01-.20. We do not believe that a state-chartered savings and loan association that amends its charter to acquire trust powers would surrender its authority to accept such accounts or deposits therein.

In your final question, you ask:

4. Does section 2(b) of article 1513a, V.T.C.S., permit the banking commissioner to authorize the savings and loan department to conduct examination of trust departments of state-chartered savings and loan associations?

The pertinent part of section 2(b), article 1513a, provides as follows:

The Banking Commissioner of Texas shall have authority to examine or cause to be examined each such corporation annually or more often if he deems it necessary.

The savings and loan act also requires periodic examination of savings and loan associations, and section 8.10 of article 852a provides that the savings and loan commissioner shall examine or cause an examination to be made into the affairs of every association subject to the act.

Therefore, if a state-chartered savings and loan association elects to offer trust services, then it is subject to examination by the banking commissioner as well as the savings and loan commissioner at least of its trust operations. While each statute authorizes the respective commissioner to cause an examination to be made, we believe the language of the statutes would authorize a delegation of authority from one commissioner to another. Although we believe that the banking commissioner could delegate his authority to examine the trust departments at a savings and loan association, there is no requirement that he do so. Section 2(a) of article 1513a subjects trust companies to supervision by the banking commissioner; clearly, the ultimate responsibility for regulating trust companies rests with the banking commissioner.

## S U M M A R Y

A state-chartered savings and loan association may amend its charter to offer trust services, as provided in article 1513a, V.T.C.S. If the association's permanent reserve stock fund is at least $500,000, it will meet the $500,000 paid-in capital requirement. The offering of trust services would merely be incidental to an association's authority to accept savings accounts, and therefore, the association would not lose its ability to accept such deposits. The state banking commissioner would retain primary authority for examining trust departments at such associations.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Thomas M. Pollan
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Acting Chairman
Jon Bible
Rick Gilpin
Thomas M. Pollan