## UHLMANN GRAIN CO. OF TEXAS v. WILSON.

No. 12909.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 9, 1933.

Rehearing Denied Jan. 27, 1934.

C. C. Gumm, of Fort Worth, for appellant.

Richard Owens, Hampden Spiller, and Harry K. Brown, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

Miss Marguerite Mallow, who was a few months past the age of 20 years and who had been working as a stenographer in a law office in the city of Fort Worth for more than two years and whose father, C. E. Mallow, had theretofore been engaged in the grain business for about twenty years, decided to speculate in grain on the future market, and, in order to accomplish that purpose, she engaged her father to handle all such transactions as her agent. The Uhlmann Grain Company of Texas was engaged in the grain business in the city of Fort Worth, and Miss Mallow addressed to them the following letter:

"October 28, 1931.

"Uhlmann Grain Company, Fort Worth, Texas.

"Gentlemen: I hand you herewith certificate No. 2077 for five shares of Continental

Bank & Trust Company stock. This stock is to be held in trust for me as margin on any open grain trades with you, all of said trades to be carried on in my name, and any and all profits arising from same to be paid to me. This stock is to be returned to me on my request whenever my account with you is closed up.

"This will authorize you to permit C. E. Mallow to execute all trades for my account as he may see fit.

"Kindly acknowledge receipt of the above stock.

"Very truly yours,
"[Signed] Marguerite Mallow."

And the Uhlmann Grain Company delivered to her the following reply thereto:

"October 28, 1931.
"Received from Marguerite Mallow Certificate No. 2077 for five shares of Continental Bank & Trust Company stock to be held as margin on her grain account as per letter to us of October 28, 1931.

"[Signed]   Uhlmann Gr. Co.
"John F. Bush."

Thereafter certificates for five additional shares of capital stock of the Continental Bank & Trust Company were delivered to the Uhlmann Grain Company of Texas for the same purpose and on the same terms.

After the stock had been delivered to the Uhlmann Grain Company of Texas, that company at the instance and request of C. E. Mallow employed the Uhlmann Grain Company of Illinois to handle the trades for purchase and sale of grain on the grain market in Chicago, all such trades to be under the direction of C. E. Mallow but in the name of his daughter, Marguerite Mallow; and, to secure any margins of losses on such trades, the ten shares of capital stock of the Continental Bank & Trust Company belonging to Marguerite Mallow were by the Uhlmann Grain Company of Texas delivered to the Uhlmann Grain Company of Illinois. The Illinois corporation then proceeded to make trades on the future grain market, consisting in buying and selling, and the transactions were some twenty in number. Those transactions began on October 29, 1931, and ended on November 23, 1931, resulting in a loss which was charged to Marguerite Mallow in the aggregate sum of $646.89. A confirmation of each of those trades was mailed to Marguerite Mallow in Fort Worth as the same was consummated.

On December 21, 1931, Marguerite Mallow, through Mrs. L. A. Wilson as her next friend, instituted this suit against the Uhlmann Grain Company of Texas to recover title and possession of the ten shares of stock in the Continental Bank & Trust Company of Fort Worth which it had received from Marguerite Mallow as above noted, and in the alternative for the value of said stock in the event of defendant's failure to deliver it. Later and after Marguerite Mallow had attained the age of 21 years she prosecuted the suit in her own behalf.

The record shows that the stock certificates were deposited with the Illinois corporation to cover margins on the trades made by it for Marguerite Mallow on the Chicago Board of Trade, and that that company has never returned the same either to Marguerite Mallow or to the defendant. Those facts were alleged as a special defense by the defendant company, with further allegations that, at the time that company undertook the transactions for Marguerite Mallow, it did not know she was a minor, but, on the contrary, was assured by her father that she was of lawful age, and but for which assurance the company would not have undertaken the services which it performed; and there was a further plea of estoppel against the plaintiff based on those facts.

The defendant also filed a cross-action against Marguerite Mallow and her father seeking a recovery of the $646.89, which was the amount of the losses resulting from the trades made on the Chicago Board of Trade.

In answer to special issues, the jury found that during the months of October and November, 1931, the cash market value of the bank stock was $75 per share, and that the losses sustained by the defendant Uhlmann Grain Company of Texas by reason of its transactions above mentioned with C. E. Mallow and the plaintiff amounted to $646.89. Judgment was rendered in favor of plaintiff against the defendant, Uhlmann Grain Company of Texas, for title and possession of the ten shares of capital stock and in the event the stock is not delivered to the plaintiff "within thirty days after this judgment becomes final, that plaintiff have and recover from said defendant the sum of Seven Hundred Fifty Dollars ($750.00) together with interest thereon from this date at the rate of six per cent per annum." It was further decreed that the Uhlmann Grain Company of Texas should recover from C. E. Mallow the sum of $646.89, the amount of its losses on the transactions, with interest.

No appeal has been prosecuted from that judgment by C. E. Mallow, but the Uhlmann

Grain Company of Texas has appealed from a judgment rendered against it.

The contention is made that the capital stock in the Continental Bank & Trust Company of Fort Worth was the subject-matter in controversy, and the court had no jurisdiction over it because it is in the state of Illinois and therefore beyond the jurisdiction of the courts of Texas. The suit for cancellation of plaintiff's assignment of her stock certificates was equitable in its nature and was a personal action. Chicago, T. & M. C. Ry. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; 7 Tex. Jur. § 2, p. 884. And in section 4, p. 887, of 7 Tex. Jur., this is said: "When the court has obtained jurisdiction of a bill for rescission, and a decree of cancellation is warranted, it may retain jurisdiction for the purpose of adjusting all the rights and claims of the parties, growing out of the transaction set aside, so as to do complete equity, and leave nothing for future litigation which it can dispose of in the exercise of its equitable powers. * * * It has no power or authority by its decree to affect the title to property located outside the state. Accordingly, the cancellation of a deed to land situated in another jurisdiction may not be authorized. An exception to this rule exists where the court has jurisdiction of all persons or parties in interest. In such a case, the proceeding being in personam, a decree may be ordered to execute deeds, etc., although the title to land without the state is incidentally affected."

Under those authorities it is our conclusion that, if the plaintiff showed a right to cancel the assignment of her bank stock, which the defendant has placed beyond the jurisdiction of the court and which it has refused to restore to her, she would have the right to recover for its market value on the theory of wrongful conversion; all parties in interest being parties to the suit and therefore within the jurisdiction of the court.

It is well settled that as a general rule the contract of a minor may be disaffirmed whenever he reaches the age of majority. 23 Tex. Jur. § 36, p. 729, and section 40, p. 733.

In Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849, it is held that it is not incumbent upon the plaintiff in a case seeking a cancellation of his contract, entered into while a minor, to tender back the consideration which has not come into his hands, or which he has re-ceived but has dissipated during his minority. See, also, 20 Tex. Jur. § 41, p. 734.

The defendant specially pleaded estoppel against plaintiff, based on allegations of an intentional and fraudulent deception practiced on the defendant in representations made to defendant by plaintiff's father that she was of lawful age at the time she hypothecated her stock certificates for the purposes already mentioned and which defendant in good faith relied on and but for which it would not have accepted the certificates. And there was uncontroverted testimony that such misrepresentations were in fact made by C. E. Mallow to John F. Bush, defendant's manager, who acted for it in the transactions. And Bush further testified without contradiction that he in good faith relied on such representation as to plaintiff's age and was induced thereby to accept the stock certificates and to use the same as they were employed. It is the settled rule of decisions in this state that, even as against an innocent purchaser for value, a minor is not estopped by his acts which mislead another to his injury unless the same was intentional and fraudulent. Steed v. Petty, 65 Tex. 490; 23 Tex. Jur. § 9, p. 703, and section 49, p. 743.

But that defense of estoppel was not submitted to the jury, nor did defendant request its submission, and therefore it was waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

And the fact that the contract between plaintiff and defendant was fully executed before any notice to defendant of its disaffirmance was no bar to her right to rescind it. 3 Page on the Law of Contracts, § 1615.

We conclude further that plaintiff's pleadings were sufficient to show that she relied on her disability of minority as a ground for disaffirmance of her contract and the relief she prayed for.

The minority of the plaintiff at the time of the transactions with the defendant grain company being conclusively established, it follows therefore that she had the right to disaffirm the contract and to have it canceled, and that its cancellation was necessary in order to recover the alternative relief sought, to wit, the market value of the stock.

For the reasons indicated, all assignments of error are overruled, and the judgment complained of by the appellant is affirmed. The judgment in its favor against C. E. Mallow is left undisturbed.