Earl WATSON, Appellant,

v.

Manuel HERNANDEZ et al., Appellees.

No. 7313.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 9, 1963.

Rehearing Denied Jan. 6, 1964.

Willard G. Street, Jr., and J. R. Hall, Littlefield, for appellant.

Moran & Miller, Dimmitt, for appellees.

NORTHCUTT, Justice.

This is an action brought by Manuel Hernandez by and through his next friend, Ofelia Bird, as plaintiff, against Earl Watson, as defendant, to recover actual dam-

ages and exemplary damages because of the wrongful conversion by defendant of an automobile belonging to the plaintiff. The trouble arose over the possession of an automobile. This suit was brought in Castro County, Texas. The defendant filed his plea of privilege seeking to have the suit transferred to Lamb County, Texas, the county of his residence. The plaintiff filed his controverting affidavit seeking to retain venue under Exception 9 of Article 1995 of Vernon's Ann.Texas Revised Civil Statutes. A hearing was had by the court and the plea of privilege was overruled, and from that order, the defendant perfected this appeal. The parties will hereafter be referred to as plaintiff and defendant as they were in the trial court.

Ofelia Bird went to the defendant seeking to secure a loan of $125 to give to her sister who at one time worked for the defendant's son. The defendant in testifying concerning the making of this loan testified as follows:

"Q. Now, lets go back here to this loan transaction you are talking about. Where did all that take place?

"A. Springlake.

"Q. What was the occasion for that?

"A. Well, they wanted to borrow some money.

"Q. Are you running a bank?

"A. No.

"Q. Are you running a finance company or a loan company?

"A. No.

"Q. Well, what was the occasion for you loaning these people money?

"A. Her sister, the lady's sister, helped my boy strip cotton last year, last fall, and she was a good hand, and they came to me, this lady here, and she said it was her sister, I don't know whether it is her sister or not. She said this boy was her son, but I found out different since then. And this lady said that—or this lady here did all the talking, said that her sister had some sick folks in the Valley and wanted to go back home, and asked me if I would loan her $125.00 on the car. And I told them that I didn't know, I would have to think about it. And she was getting the money for her sister to go home on. And they came back, I don't know, in two or three days, and I told them that I would, that I would loan her money so her sister could go home. I believe she said that she had some sick folks, kids, I believe, her kids. And I told her that I would, and I believe it was on a Saturday that they came down there, and I told them that I would let them have the money, and she said: 'Well,' she told me that they would sign the title over to me until they paid me, and I told them 'All right.' And she said:

" 'Well,' said, 'The title is in my son's name.' And her son wasn't with her. There wasn't no man with her. And I said:

" 'Well, you couldn't sign the title, you will have to go get him, and you can witness it. You can witness it.' So she went and got this boy and brought him back down there, and we went down to Busby Motor Company, and he didn't do much talking. She did all the talking.

"Q. Well, did you loan her the money? Or did you loan it to her sister?

"A. I don't know who.

"Q. Huh?

"A. I loaned it to her.

"Q. You loaned it to her?

"A. And she said that she was going to give it to her sister.

"Q. Well, did you loan the money to her sister, or did you loan it to her?

"A. I loaned it to her."

The only written evidence introduced concerning this loan is an instrument headed "Note With Chattel Mortgage", which was signed by Manuel Hernandez on January 8, 1963, but was never notarized. The note provided it was "payable in consecutive installments of $25 on a weekday of each consecutive month or as indicated in schedule of payments on the margin hereof, and commencing January 15, 1963." No schedule of payments was indicated. One $25 payment had been made on the note. The date the payment was made is not shown. On February 19, 1963, the defendant took possession of the automobile. Since defendant took possession of the automobile four days after the second payment was not paid on February 15, 1963, we take for granted that the $25 payment was applied as to the payment due during the week beginning January 15, 1963. The second payment of $25 would be due on a weekday beginning February 15, 1963, and if that be true, the plaintiff still had at least two days in which to make the second payment when defendant took possession of the automobile.

The defendant presents this appeal upon two assignments of error. The effect of both defendant's assignments contend there was no showing of a crime, offense or trespass as to bring this case within the provisions of Section 9 of Article 1995.

■ It is admitted the defendant took possession of the automobile in Castro County. It is well settled that conversion of personal property is a trespass under Subdivision 9 of Article 1995. Market Poultry and Egg Company v. Mueller, Tex.Civ.App., 287 S.W.2d 202; Amberson v. Wilkerson, Tex.Civ.App., 285 S.W.2d 420. If there is sufficient evidence to show that the defendant wrongfully took possession of the automobile of the plaintiff and converted it to his own use, then the trial court was justified in holding that defendant committed a trespass in Castro County and in overruling the plea of privilege.

On the day in question the plaintiff and Ofelia Bird were traveling south in the automobile and met the defendant as he was going north. The defendant turned around and started after the plaintiff and the plaintiff stopped. The plaintiff took the keys out of the car and put them in his pocket. The plaintiff testified that defendant came up to the automobile and opened the door and told the plaintiff to "scoot over", that he looked at Ofelia Bird and she told him to scoot over. The plaintiff further testified defendant asked plaintiff for the keys and he refused to give them to him and Ofelia told him to give the keys to defendant.

The defendant testified that when plaintiff handed him the keys, he told them he was going to take the car home with him. He further testified they (plaintiff and Ofelia Bird) knew to move over, to give him the keys, and to get out. He did not have any kind of papers to take possession of the car. Defendant took the car and took it home with him and still had it in his possession at the time of this trial. On the same day defendant took the car he refused to let plaintiff have it unless he would pay the defendant $200. Defendant further testified that when he turned around to catch them, he was going to get the money or the car but he never asked them for the money and when he told them he was going to take the car he meant it. The plaintiff and Ofelia Bird testified the reason they let defendant have the car was because they were afraid of him.

■ A mortgagee cannot use force or violence to recover mortgaged property. Godwin v. Stanley, Tex.Civ.App., 331 S.W.2d 341, and cases there cited.

Plaintiff further contends the taking of the car was wrongful because of the invalidity of the alleged mortgage and wrongful because of the manner of taking. Manuel Hernandez was seventeen years of age when he gave the note and chattel mortgage to the defendant to secure the payment of the $125 loan to Ofelia Bird for the use of her sister. There was no fraud shown in this hearing on the part of the plaintiff, a boy of seventeen years of age. Plaintiff had never received any of the money and had nothing to return to the defendant. He did whatever he was told to do. Defendant knew the $125 was not for necessities for the plaintiff but testified he loaned the money to Ofelia Bird for the use of her sister. It is stated in the case of Rutherford v. Hughes, Tex.Civ.App., 228 S.W.2d 909, as follows:

"It has long been the established rule in this state that, with a limited class of exceptions, an infant's contracts are voidable at his instance, regardless of whether they are beneficial or injurious to him or not, and, if he still has the consideration or property received by him, he must restore it to the party with whom he contracted and from whom he received it. Prudential Building & Loan Ass'n. v. Shaw, 119 Tex. 228, 26 S.W.2d 168, 27 S.W.2d 157. * * *

"It is well established by the decisions that a minor is not estopped by his acts which mislead another to the latter's injury unless the acts were intentional and fraudulent, and also unless the party with whom he deals relied upon such acts and conduct. Vogelsang v. Null, et al., 67 Tex. 465, 3 S.W. 451; Kilgore v. Jordan, 17 Tex. 341; Uhlmann Grain Co. of Texas v. Wilson, Tex.Civ.App., 68 S.W.2d 281."

Under this record we are of the opinion the trial court could do nothing other than to deny the plea of privilege. Judgment of the trial court is affirmed.